UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KAVEH L. AFRASIABI,

                            Plaintiff,

      v.

PIERS MORGAN, BHARATI NAIK, and WAKE UP
PRODUCTIONS, LTD.,

                          Defendants.

Case No. 25-cv-12311-JCB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    The Parties ............................................................................................... 2

    B.    Dr. Afrasiabi's Arrest and Prosecution for Violating FARA ................................. 3

    C.    The June 25 *Piers Morgan Uncensored* Segment .................................... 4

    D.    The Instant Lawsuit ................................................................................ 6

ARGUMENT ...................................................................................................................... 6

I.    THE DEFAMATION CLAIM FAILS AS A MATTER OF LAW ................................. 7

    A.    Dr. Afrasiabi Cannot Meet His Burden of Pleading Material Falsity .................... 8

    B.    The Statements Are Protected as Fair Report ...................................... 10

    C.    Plaintiff Fails to Plausibly Plead Actual Malice .................................. 12

        1.    Dr. Afrasiabi Is a Limited Purpose Public Figure .................................... 12

        2.    Dr. Afrasiabi Must – but Cannot – Plead Actual Malice ......................... 13

II.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A "CIVIL RIGHTS VIOLATION" ......................................................................................................... 15

III.    DR. AFRASIABI HAS NOT ADEQUATELY PLED EMOTIONAL DISTRESS ........ 16

IV.    DR. AFRASIABI CANNOT STATE A CLAIM THAT DEFENDANTS INCITED UNRELATED THIRD-PARTIES TO VIOLENCE ...................................... 18

CONCLUSION .................................................................................................................. 19

4916-9845-7953v.3 0125866-000002

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afrasiabi v. United Press Int'l,*
    561 F. Supp. 3d 1 (D. Mass. 2021) .......................................................................1, 5, 10, 11

*Albright v. Morton,*
    321 F. Supp. 2d 130 (D. Mass. 2004),
    *aff'd sub nom. Amrak Prods., Inc. v. Morton,*
    410 F.3d 69 (1st Cir. 2005) ...........................................................................................18

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999) .........................................................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................7, 14, 15

*Ayyadurai v. Floor64, Inc.,*
    270 F. Supp. 3d 343 (D. Mass 2017) ..............................................................................7, 8

*Bah v. Apple Inc.,*
    2021 WL 4416104 (D. Mass. Sept. 27, 2021) .................................................................14

*Bally v. Northeastern Univ.,*
    403 Mass. 713 (1989) ....................................................................................................16

*Barden v. Harpercollins Publishers, Inc.,*
    863 F. Supp. 41 (D. Mass. 1994) ..............................................................................17, 18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................................14

*Bell v. Mazza,*
    394 Mass. 176 .................................................................................................................16

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984) ...................................................................................................7, 14

*Brown v. Hearst Corp.,*
    54 F.3d 21 (1st Cir. 1995) .............................................................................................17

*Conley v. Romeri,*
    60 Mass. App. Ct. 799 (2004) ........................................................................................17

*Deripaska v. Associated Press,*
    282 F. Supp. 3d 133 (D.D.C. 2017) ...............................................................................12

i

*Gamst v. Bos. Univ.*,
  2024 WL 758173 (D. Mass. Feb. 23, 2024) ................................................................1

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .............................................................................................12, 13

*Guo v. Wang*,
  2024 WL 2274610 (D. Mass. May 20, 2024) ..........................................................7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) .................................................................................................13

*Howell v. Enter. Publ'g Co.*,
  455 Mass. 641 (2010) ..............................................................................................10

*Jones v. Taibbi*,
  400 Mass. 786 (1987) .........................................................................................10, 11

*Juarez v. Select Portfolio Servicing, Inc.*,
  708 F.3d 269 (1st Cir. 2013) .....................................................................................7

*LaChance v. Boston Herald*,
  78 Mass. App. Ct. 910 (2011) ........................................................................9, 10, 12

*Lemelson v. Bloomberg L.P.*,
  903 F.3d 19 (1st Cir. 2018) ......................................................................................15

*Lluberes v. Uncommon Prods., LLC*,
  663 F.3d 6 (1st Cir. 2011) ........................................................................................12

*Manning v. Whole Foods Mkt. Grp., Inc.*,
  2022 WL 194999 (D. Mass. Jan. 21, 2022) .......................................................18, 19

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) ...............................................................................................8, 9

*McKee v. Cosby*,
  236 F. Supp. 3d 427 (D. Mass. 2017),
  *aff'd,* 874 F.3d 54 (1st Cir. 2017) ............................................................................8

*Mullane v. Breaking Media, Inc.*,
  433 F. Supp. 3d 102 (D. Mass. 2020),
  *aff'd,* No. 20-1061, 2021 WL 3027150 (1st Cir. Feb. 26, 2021) ......................10, 11

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .............................................................................................13, 14

4916-9845-7953v.3 0125866-000002

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
  418 U.S. 264 (1974)..................................................................................................8

*Oort v. DaSilva*,
  2004 WL 2070977 (Mass. Super. Sept. 15, 2004)...................................................11

*Pendleton v. City of Haverhill*,
  156 F.3d 57 (1st Cir. 1998)....................................................................................12

*Portnoy v. Insider, Inc.*,
  2022 WL 16748583 (D. Mass. Nov. 7, 2022) .........................................................15

*Ricci v. Venture Magazine, Inc.*,
  574 F. Supp. 1563 (D. Mass. 1983) .......................................................................11

*Schatz v. Republican State Leadership Comm.*,
  669 F.3d 50 (1st Cir. 2012)................................................................................7, 14

*Scholz v. Bos. Herald, Inc.*,
  2011 Mass. Super. LEXIS 281 (Mass. Super. Sept. 14, 2011)................................11

*Scholz v. Delp*,
  473 Mass. 242 (2015), *cert. denied,* 578 U.S. 1023 (2016)....................................16

*Sena v. Commw.*,
  417 Mass. 250 (1994) ............................................................................................17

*Shay v. Walters*,
  702 F.3d 76 (1st Cir. 2012)..............................................................................14, 16

*Snyder v. Phelps*,
  562 U.S. 443 (2011)...............................................................................................17

*Thompson v. Valley Patriot, Inc.*,
  2009 WL 2995361 (Mass. Super. Ct. Jan. 2, 2009),
  *aff'd*, 76 Mass. App. Ct. 1119 (2010)....................................................................13

*Tripoli v. Boston Herald-Traveler Corp.*,
  359 Mass. 150 (1971) ............................................................................................13

*U.S. ex rel. Hagerty v. Cyberonics, Inc.*,
  95 F. Supp. 3d 240 (D. Mass. 2015) .......................................................................1

*Veilleux v. NBC*,
  206 F.3d 92 (1st Cir. 2000)......................................................................................8

*Wolsfelt v. Gloucester Times*,
  98 Mass. App. Ct. 321 (2020).................................................................................10

iii

*Yohe v. Nugent*,
    321 F.3d 35 (1st Cir. 2003) ................................................................8, 10, 11, 12

**Statutes**

22 U.S.C. § 612 ............................................................................................3

22 U.S.C. §§ 611, *et seq.* ..........................................................................1, 3

28 U.S.C. § 1441(a) .....................................................................................6

42 U.S.C. § 1983 ........................................................................................15

MASS. GEN. LAWS Chapter 12, § 11H (2021) .........................................16

MASS. GEN. LAWS Chapter 258E, § 1 (2021) ..........................................18

**Rules**

Fed. R. Civ. P. 8 *et seq.* ...........................................................................15

Fed. R. Civ. P. 12(b)(6) ..............................................................................7

4916-9845-7953v.3 0125866-000002

# INTRODUCTION

According to his own Complaint ("Compl."), Plaintiff Dr. Kaveh L. Afrasiabi was a well-known political scientist, who worked for 14 years as a consultant to Iran's Mission to the United States, before he was arrested in 2021 for violating the Foreign Agent Registration Act, 22 U.S.C. § 611, *et seq*. ("FARA"). Compl. ¶¶ 4-12, 15; *see also* 21-cr-00046 (EDNY), Dkt. No. 6. *See* Declaration of Rachel Strom ("Strom Decl.") Ex. A ("Indictment").[1] In announcing the Indictment, the United States Department of Justice ("DOJ") stated: "For over a decade, Kaveh Afrasiabi pitched himself to Congress, journalists, and the American public as a neutral and objective expert on Iran . . . all the while, Afrasiabi was actually a secret employee of the Government of Iran . . . who was being paid to spread their propaganda." Strom Dec. Ex. C at 1.

Dr. Afrasiabi summed up the arrest well in an op-ed he wrote noting he was "subjected to a high-profile FBI arrest accusing [him] of ***being Iran's 'secret agent'***" and for "publishing 'pro-Iran propaganda disguised as objective analysis." Strom Dec. Ex. D at 1. Indeed, Judge Burroughs recognized, in a different defamation lawsuit brought by Plaintiff that the Government's charges against Dr. Afrasiabi "would justify labeling him a 'spy.'" *Afrasiabi v. United Press Int'l*, 561 F. Supp. 3d 1, 7 n. 7 (D. Mass. 2021). Thankfully for Dr. Afrasiabi, mere months before the case was slated for trial, he was pardoned by President Joseph Biden.

Nevertheless, Dr. Afrasiabi now brings this lawsuit because he claims he was defamed when he appeared as a guest on an episode of Defendant Piers Morgan's YouTube political panel

---

[1] As set forth more fully in Defendants' concurrently filed Request for Judicial Notice ("RJN"), in evaluating a motion to dismiss, this Court may consider four types of documents outside the Complaint: (1) documents of undisputed authenticity; (2) official public records; (3) documents central to plaintiff's claim; and (4) documents sufficiently referred to in the complaint." *Gamst v. Bos. Univ.*, 2024 WL 758173, at *1 n.1 (D. Mass. Feb. 23, 2024). Courts can also take judicial notice of the content of online news articles. *See U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 256 (D. Mass. 2015) (history omitted). Here, as detailed in the RJN, this Court can take judicial notice of the Piers' Morgan segment at issue (Compl. ¶ 18), the Indictment (Compl. ¶¶ 15, 16), the DOJ's press release announcing the Indictment, and Plaintiff's op-ed, noting he was arrested for being "Iran's 'secret agent'." *See also* footnotes 3 and 4.

show, *Piers Morgan Uncensored* when Mr. Morgan introduced him as "a former advisor to Iran's nuclear negotiating team who was arrested in the US for alleged spying before being pardoned by Joe Biden." Strom Decl. Ex. B (the "Segment"). Dr. Afrasiabi immediately objected to the characterization, called Mr. Morgan a "damn liar" and threatened to bring a "major lawsuit on [his] head." *Id.* The fiery exchange was promoted on social media with clips posted on TikTok, Instagram, Facebook, and X. But Dr. Afrasiabi's admission that he was accused of being an Iranian "secret agent" and violating FARA—along with the substance of the DOJ's allegations against him—makes this defamation action not only frivolous but also truly perplexing. While Dr. Afrasiabi may object to the fairness of the DOJ prosecution that cannot give rise to a viable defamation claim—or any other claim against Defendants—based on a fair and pithy statement that he had been arrested for "alleged spying."

All of Plaintiffs claims—defamation, an unidentified "civil rights violation" intentional and "unintentional" infliction of emotional damage, and "incitement of violence against the plaintiff and bodily harm" must be promptly dismissed because Plaintiff has not—and cannot —allege the basic elements of any of these claims. This case should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

### A.    **The Parties**

Plaintiff is a resident of Massachusetts and a well-known political scientist who, for 14 years, was a consultant to Iran's Mission to the United Nations. Compl. ¶¶ 4, 5, 13. He has authored more than 30 books as well as fiction, poetry, and numerous scholarly articles published in well-known magazines like the *New York Times*, the *Washington Post*, the *Boston Globe*, and the *San Francisco Chronicle*. *Id.* ¶¶ 4, 6. As a self-described "international affairs expert," he frequently appears on "numerous television networks" like CNN, Al Jazeera, Voice of America, BBC, and NPR. *Id.* ¶ 7. He is also a "former consultant" to CBS' *60 Minutes* and Fox. *Id.* ¶ 10.

2

In 2021, Dr. Afrasiabi was arrested and prosecuted for allegedly violating FARA, and was pardoned two years later by President Biden. *Id.* ¶¶ 15, 16. He wrote a book titled *Agent of Peace: Response to US Accusation* and has given numerous press interviews denying the allegations against him. *Id.* ¶ 17.

Defendant Piers Morgan is a television personality who resides in the U.K. and hosts *Piers Morgan Uncensored*, a political panel show distributed on YouTube. *Id.* ¶ 1. Defendant Bharati Naik, also a U.K. resident, is a producer for the Show. *Id.* ¶ 2. Defendant Wake Up Productions, Ltd. is the Show's London-based production company. *Id.* ¶ 3.

**B.      Dr. Afrasiabi's Arrest and Prosecution for Violating FARA**

As Dr. Afrasiabi acknowledges, in January 2021, he was charged and arrested for violating FARA for failing to register as a foreign Iranian agent. Compl. ¶ 15. FARA requires, *inter alia*, any person who acts as an "agent" or "at the order, request, or under the direction or control, of a foreign principal" and who engages in political or publicity activities on behalf of a foreign country to disclose his role to the U.S. Attorney general. *See generally* 22 U.S.C. §§ 611, 612.

On January 25, 2021, Dr. Afrasiabi was indicted in the Eastern District of New York for "knowingly and willfully conspir[ing] to act and cause others to act in the United States as an agent of a foreign principal, to wit: the government of the Islamic Republic of Iran, without registering with the Attorney General of the United States." Indictment at 1. He was accused of secretly engaging in various political activities on behalf of Iran, including, *inter alia*, drafting a letter while secretly working on behalf of Iran that an unnamed congressman sent to the President with a proposal related to the U.S.-Iran nuclear negotiations. *Id.* at 2. He was also accused of emailing congressional staffers offering to brief them on Iran-U.S. nuclear negotiations while concealing his status as a foreign agent from the Attorney General. *Id.*

In its official press release describing the Indictment, the DOJ stated that Afrasiabi worked as a "secret employee" of Iran "paid to spread [Iranian] propaganda," Strom Dec. Ex. C at 1, and that "Afrasiabi allegedly sought to influence the American public and American policymakers for the benefit of his employer, the Iranian government, by disguising propaganda as objective policy analysis and expertise." *Id.* The press release claimed, "For more than a decade, Mr. Afrasiabi was allegedly paid, directed, and controlled by the Government of Iran to lobby U.S. government officials, including a congressman; and to create and disseminate information favorable to the Iranian government." *Id.* It recounted, as alleged in the Indictment itself, that Dr. Afrasiabi emailed Iran's Foreign Minister and Permanent Representative to the U.N. to advise on retaliating for the U.S. assassination of Iranian Major General Soleimani, proposing that the Iranian government "end all inspections and end all information on Iran's nuclear activities pending a [U.N. Security Council] condemnation of [the United States'] illegal crime." According to the release, he claimed doing so would "strike fear in the heart of [the] enemy." *See also* Indictment ¶ 2 (a)-(i).

The case went on for over two years, and only ended when Plaintiff was pardoned by President Biden. Compl. ¶ 16.

### C.    The June 25 *Piers Morgan Uncensored* Segment

On June 25, 2025, Dr. Afrasiabi appeared on Mr. Morgan's program *Piers Morgan Uncensored* as part of panel to discuss Iran's nuclear program in the context of recent Israeli strikes. *See generally* the Segment; Compl. ¶ 18.

During the Segment, Mr. Morgan introduced Dr. Afrasiabi by stating: "I'm going to be joined on the panel in a moment by Kaveh Afrasiabi, a former advisor to Iran's nuclear negotiating team who was arrested in the US for alleged spying before being pardoned by Joe Biden." Segment at 14:50-15:01. Mr. Morgan then brought Dr. Afrasiabi into the conversation, asking him about

Iran's uranium enrichment. Segment at 22:54-22:51. Instead of responding, Dr. Afrasiabi protested

that Mr. Morgan "mischaracterized" him, as he was "not charged as a spy for Iran. I was an

international affairs consultant for Iran's mission for thirteen years under the UN norms and

guidelines. . . .  What I was doing was in line with all the other consultants for other country

missions none of whom have registered as a foreign agent." Segment at 23:04-23:28. Mr. Morgan

and Dr. Afrasiabi go on to debate the nature of the accusations against Dr. Afrasiabi.

> **Mr. Morgan:**  Well you were accused of spying and you were pardoned by Joe Biden
> **Dr. Afrasiabi:** I was not accused of being a spy and I will bring a major defamation lawsuit on you.

Segment at 23:34-24:10. Dr. Afrasiabi then falsely claimed that he "successfully sued the

UPI…for…defamation against me." Segment at 24:20-24:25.[2] Mr. Morgan asks again, "Is it true

you were accused of spying…Is it true you were accused of it?" Segment at 24:26-24:29. Dr.

Afrasiabi then explained:

> **Dr. Afrasiabi**: No! Absolutely not! I was accused of violating the Foreign Agent Registration Act, FARA, which requires registration but not for people who work under the UN -- UN mandate.
> **Mr. Morgan**: Alright. But you were arrested?
> **Dr. Afrasiabi**: I was arrested for 24 hours…I denied the charges. I represented myself.

Segment at 24:31-24:51.

Mr. Morgan then clarified the he "didn't say you were found guilty" and that he "didn't accuse

[Dr. Afrasiabi] of anything." Segment at 24:51-57. Dr. Afrasiabi disagreed.

> **Dr. Afrasiabi**: No you said that I've been charged with being a spy.
> **Mr. Morgan**: No I didn't! I said you were accused of it!
> **Dr. Afrasiabi**: Yes you did! You are a damn liar!

Segment at 25:06-25:08. As their exchange concludes, Dr. Afrasiabi threatens Mr. Morgan, "I

will bring a major lawsuit on your head!" Segment at 25:16-19.

---

[2] In reality, this Court dismissed his defamation lawsuit that alleged he was libeled by an article saying he had been arrested for "spying." *See generally Afrasiabi v. United Press Int'l*, 561 F. Supp. 3d 1, 8-9 (D. Mass. 2021).

4916-9845-7953v.3 0125866-000002

The Show also posted a two minute and 31 second clip to its social media accounts from the Segment of Dr. Afrasiabi explaining that he was "not charged as a spy for Iran," that he was an "international affairs consultant for Iran's mission for 13 years" and the ensuing discussion about the accusations against Dr. Afrasiabi.[3] Compl. ¶ 18.[4] ("social media clips").

### D.    The Instant Lawsuit

On July 9, 2025, Dr. Afrasiabi filed the instant lawsuit in Middlesex Superior Court. Dkt. No. 1. On August 19, 2025, Defendants removed this action to the District of Massachusetts pursuant to 28 U.S.C. § 1441(a). *Id.*

The Complaint brings claims for defamation, "civil rights violations" based on no identified statute, intentional and "unintentional" infliction of emotional damage, and "incitement of violence against the plaintiff and bodily harm" based on Mr. Morgan's introduction of Dr. Afrasiabi as a "former advisor to Iran's nuclear negotiating team who was arrested in the US for alleged spying before being pardoned by Joe Biden." Segment at 14:50-15:01; *see also* Compl. ¶ 18. Plaintiff also sues over the social media clips. Compl. ¶ 18; *id.* Ex. 1.

### ARGUMENT

Dr. Afrasiabi's claims for defamation, "civil rights violation," intentional and "unintentional" infliction of emotional damage, and "incitement of violence against the plaintiff and bodily harm" must be promptly dismissed.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see generally* Fed. R. Civ. P.

---

[3] https://www.tiktok.com/@piersmorganuncensored/video/7519270163032608022 (last visited Aug. 20, 2025)
[4] https://www.facebook.com/piersmorganuncensored/videos/kaveh-afrasiabi-threatens-to-sue-piers-morgan-for-stating-facts/1059103386346581/ (last visited Aug 20, 2025);
https://www.instagram.com/reel/DLQmvgSh6E5/?hl=en (last visited Aug. 20, 2025).

12(b)(6). While the Court must accept factual allegations and reasonable inferences in favor of a plaintiff, it must separate such allegations from "conclusory statements . . . to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." *Juarez v. Select Portfolio Servicing, Inc.,* 708 F.3d 269, 276 (1st Cir. 2013) (quotations omitted). Although *pro se* complaints are entitled to a liberal reading, a *pro se* plaintiff like Dr. Afrasiabi "must still comply with the applicable procedural and substantive rules of law." *Guo v. Wang,* 2024 WL 2274610, at *1 (D. Mass. May 20, 2024).

Early screening of a complaint is especially important in cases like this that implicate the First Amendment. To embark on discovery, "a plaintiff must *first* produce a complaint that passes the plausibility test—a test that helps keep defendants from wasting time and money in discovery on 'largely groundless' claims." *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 56 (1st Cir. 2012) (emphasis in original) (citing *Twombly*, 550 U.S. at 558 ). Here, the Complaint is far from plausible and should be dismissed.

## I.     THE DEFAMATION CLAIM FAILS AS A MATTER OF LAW

To establish a defamation claim, a plaintiff must satisfy four basic elements: 1) a "defamatory" statement of fact that harms the plaintiff's reputation; 2) which was published to a third party; 3) that is provably false; and 4) that is defamatory *per se*, or which caused special damages that the plaintiff pleads specifically. *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 355–56 (D. Mass 2017) (citations omitted). Where, as here, the plaintiff is a public figure, he must also prove constitutional malice, *i.e.*, "that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984).

Dr. Afrasiabi's defamation claim is not based on any provably false statements—the gist of the Statements is substantially true. If that were not enough, and it is, Defendants' statements

are privileged as a fair report on Plaintiff's arrest and FARA prosecution. Finally, the claim independently fails because he is a limited purpose public figure but has not adequately pleaded that the Defendants acted with actual malice.

### A.    Dr. Afrasiabi Cannot Meet His Burden of Pleading Material Falsity

Primarily, Dr. Afrasiabi's defamation claim is doomed because he has not met his burden of establishing that any of the facts set forth in the Segment or the social media clips are materially false. The "sine qua non of recovery for defamation" is the "existence of falsehood." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974). Where, as here, the speech involves a matter of public concern, the "plaintiff must shoulder the burden" of proving falsity. *Veilleux v. NBC*, 206 F.3d 92, 108 (1st Cir. 2000) (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)). To survive a motion to dismiss, "a complaint . . . must not only allege that the statements are false, but also provide 'factual underpinning[s] to support that claim.'" *Ayyadurai*, 270 F. Supp. 3d at 358 (citation omitted). *See also McKee v. Cosby*, 236 F. Supp. 3d 427, 450 (D. Mass. 2017) (statement is "not actionable" if the plaintiff does not—or cannot—deny the facts), *aff'd,* 874 F.3d 54 (1st Cir. 2017). The law of defamation "overlooks minor inaccuracies and concentrates upon substantial truth," *Veilleux*, 206 F.3d at 108 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)). Thus it is Dr. Afrasiabi's burden to prove that the allegedly defamatory statements at issue are "materially false." *Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003). He cannot do so if "the substance, the gist, the sting, of the libelous charge [is] justified." *Masson*, 501 U.S. at 517 (citation omitted). "Put another way, a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.*

For example, in *LaChance v. Boston Herald*, 78 Mass. App. Ct. 910 (2011), the *Boston*

8

*Herald*'s reporting that the plaintiff had been convicted of manslaughter was not "materially false" even though the plaintiff had, in actuality, been convicted of rape. There, the *Boston Herald* published a series of articles discussing incarcerated felons, including the plaintiff, who placed personal advertisements on a matchmaking website. *Id.* at 910. The court explained that even though it was literally false to write that the plaintiff had been convicted of manslaughter, "[p]ublication of the plaintiff's actual criminal record . . . would have been, at the very least, equally as damaging to the plaintiff's reputation in the mind of a reader." *Id.* at 912. Further, regardless of the precise crimes the plaintiff committed, the "gist" of the article—that convicted felons were issuing advertisements without disclosing the charges for which they were convicted—was the same.  *Id.* at 912-13.

The present case is even easier. Plaintiff *admits* that he was prosecuted for failing to register under FARA as a foreign agent of Iran.  Compl. ¶ 15. As Dr. Afrasiabi himself acknowledged in a *Modern Diplomacy* editorial, he was "subjected to a high-profile FBI arrest accusing me of **being Iran's 'secret agent'**." While the Complaint asserts that he was not "charged with any crime of spying the United States government at any time," Compl. ¶ 17, there is no actionable difference between describing an arrest for being an Iranian "secret agent" and the more colloquial term—a spy. Dr. Afrasiabi should know this better than anyone. In dismissing his defamation lawsuit against UPI for calling him a "spy", Judge Burroughs recognized that spy has many meanings and:

> Given the charges brought against Dr. Afrasiabi and the government's description of his conduct . . . one could reasonably conclude that, if proven true, those allegations would justify labeling him a "spy." After all, he is accused of secretly spreading propaganda on Iran's behalf. Such activity could aptly be described as sowing disinformation, essentially a subcategory of espionage.

*Afrasiabi*, 561 F. Supp. 3d at 7 n.7. Thus, as Judge Burroughs already held, Dr. Afrasiabi was arrested for what is commonly understood to be "spying" and he cannot plead that Defendants

stated anything false about him. Importantly, Mr. Morgan never asserted that Dr. Afrasiabi was found *guilty* of "spying." To the contrary, he made absolutely clear to viewers that Dr. Afrasiabi was arrested for "allegedly spying" but was "pardoned." *See* Segment at 14:50-15:01. Thus, just like in *LaChance*, the "gist" or "sting" of the challenged statements is no different than the admitted truth, and Plaintiff's defamation claim fails for this reason alone.

### B.    The Statements Are Protected as Fair Report

Alternatively, the challenged statement are protected by the fair report privilege, which "establishes a safe harbor for those who report on statements and actions so long as the statements or actions are official and so long as the report about them is fair and accurate." *Howell v. Enter. Publ'g Co.*, 455 Mass. 641, 651 (2010). In other words, a media organization that publishes an accurate report on official proceedings is protected from liability even if those statements turn out to be false and defamatory. *Id*. at 657-58; *Yohe*, 321 F.3d at 44.

The "fair and accurate" requirement does not require literal or technical accuracy: the privilege applies unless the report is "substantially inaccurate," in that it "create[s] a substantially greater defamatory sting" than the proceedings themselves. *Jones v. Taibbi*, 400 Mass. 786, 795-96 (1987). Critically, "accuracy" refers to "the factual correctness of the events reported and not to the truth of the events that actually transpired." *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 109 (D. Mass. 2020), *aff'd,* 2021 WL 3027150 (1st Cir. Feb. 26, 2021). "A report need give only a rough-and-ready summary that was substantially correct in order to qualify for the fair report privilege." *Wolsfelt v. Gloucester Times*, 98 Mass. App. Ct. 321, 330 (2020).

Accordingly, reporting on criminal proceedings "may permissibly focus on the more dramatic occurrences, to the exclusion of the less interesting," and "need not describe legal proceedings in technically precise language." *Ricci v. Venture Magazine, Inc.*, 574 F. Supp. 1563,

1567 (D. Mass. 1983). Instead, courts are to "apply a common sense standard of expected lay interpretation of media reports of trials, rather than inquiring whether a report was strictly correct in defining legal charges and describing legal rulings." *Id.* (noting, for example, a "report that a plaintiff had been 'committed' to a state hospital was not actionable, even though there had not been an official commitment proceeding"). The fair report privilege covers the "accusation of a crime [that] comes in the form of an arrest or indictment." *Oort v. DaSilva*, 2004 WL 2070977, at *3 (Mass. Super. Sept. 15, 2004); *see also Yohe*, 321 F.3d at 43 (same); *Jones,* 400 Mass. at796 (1987) (same).

Where evidence of the official proceeding is before the court, the privilege can be applied as a matter of law on a motion to dismiss. *See, e.g.*, *Scholz v. Bos. Herald, Inc.*, 2011 Mass. Super. LEXIS 281, at *7-8 (Mass. Super. Sept. 14, 2011) (granting motion to dismiss on fair report grounds). The bottom line is that Massachusetts requires "that the privilege be construed liberally and with an eye toward disposing of cases at an early stage of litigation." *Mullane*, 433 F. Supp. 3d at 109 (quoting *Howell*, 455 Mass at 653).

Here, as Judge Burroughs noted in *Afrasiabi v. UPI*, the Statements' assertion that Dr. Afrasiabi had been arrested for "allegedly spying" accurately reports on the Indictment. 561 F. Supp. 3d at 7 n.7. Dr. Afrasiabi was accused of secretly working on behalf of Iran, an enemy nation, on U.S. soil in violation of FARA—the fair report privilege does not require that we call these act by "technically precise language." Rather, the fair report privilege allows Defendants to call these acts what they would commonly be known as – *spying.* Clearly, Dr. Afrasiabi does not

believe his prosecution was fair—but that does not mean he was not, in fact, arrested for what amounts to spying.[5] For this additional reason, Plaintiff's claim fails.

### C.    Plaintiff Fails to Plausibly Plead Actual Malice

Dr. Afrasiabi's libel claim fails for another independent: he is at least a limited purpose public figure and must consequently plausibly plead actual malice. He has failed to do so.

#### 1.    Dr. Afrasiabi Is a Limited Purpose Public Figure

Courts have delineated two kinds of "public figure" defamation plaintiffs. A general purpose "public figure" is someone who has "assumed [a] role[] of especial prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). A "limited purpose public figure," by contrast, is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351-52. "[T]he question of whether a defamation plaintiff is a public figure is properly resolved by the court, not by the jury, regardless of the contestability of the predicate facts." *Pendleton v. City of Haverhill*, 156 F.3d 57, 68 (1st Cir. 1998); *see also LaChance*, 78 Mass. App. at 911 ("Whether the plaintiff is a public figure is a question of law.").

Foreign influence in U.S.-Iran diplomatic relations is clearly a "public controversy"— defined by the First Circuit as "some specific question" that "predate[s] the alleged defamation," that is "actually . . . discuss[ed]," and the resolution reasonably could be expected to affect "persons beyond the immediate participants." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13-14 (1st Cir. 2011). *See also Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 142 (D.D.C. 2017) ("public controversy exists relating to Russian oligarchs acting on behalf of the Russian

---

[5] The fair report privilege can be defeated if a plaintiff can plead and prove each defendant acted with malice. But, here, Plaintiff has not plead any facts that would support the conclusion that any of the defendants acted with malice "no matter how the term is defined." *Yohe*, 321 F.3d at 44.

government").

And, it is hard to imagine a clearer case of a plaintiff injecting himself into a controversy than Dr. Afrasiabi. He admits that he has given "various press interviews" and even published a book *Agent of Peace: Response to US Accusation* denying "the US government allegation of violating FARA." Compl. ¶ 17. He was an international affairs consultant to Iran's Mission to the United Nations from 2007-2021 and while in this role, publicly and pervasively positioned himself as an expert on Iran, appearing on television networks including "CNN, Al-Jazeera, Voice of America, BBC, NPR..." *id*. ¶ 7, working as a consultant for 60 Minutes and Fox News, *id*. ¶ 10, and publishing dozens of articles in publications like *The New York Times, The Washington Post, The San Francisco Chronicle,* and *The Nation. id*. ¶ 6. This conduct is more than sufficient to be deemed a limited purpose public figure. *See, e.g.*, *Thompson v. Valley Patriot, Inc.*, 2009 WL 2995361, at *5 (Mass. Super. Ct. Jan. 2, 2009) (plaintiff was a limited purpose public figure because he "availed himself of local, regional, and national media outlets in order to publicize his views and influence comment"), *aff'd*, 76 Mass. App. Ct. 1119 (2010); *Tripoli v. Boston Herald-Traveler Corp.*, 359 Mass. 150, 156 (1971)("[B]y granting interviews . . . plaintiff catapulted himself into the 'vortex' of an important public controversy."). Dr. Afrasiabi is a public figure.

### 2.  Dr. Afrasiabi Must – but Cannot – Plead Actual Malice

To ensure "breathing space" for "freedoms of expression," the Supreme Court has long required public officials and public figures who sue for libel to prove "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271-72, 279-80 (1964) (emphasis added); *Gertz.,* 418 U.S. at 333-34. "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Rather, this heavy burden requires a public figure like Dr. Afrasiabi to "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or

that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp.*, 466 U.S. at 511 n.30. This exacting standard far exceeds negligence.  *Schatz*, 669 F.3d at 56.

Pleading actual malice is an onerous task. In *Schatz*, the First Circuit clarified that "to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred – even in a world with *Twombly* and *Iqbal*." 669 F.3d at 58. And "in determining whether allegations cross the plausibility threshold, an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts." *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012). Given this high bar, courts within the First Circuit regularly dismiss defamation claims where plaintiff's "allegations concerning defendants' mental state [were] conclusory . . . or unrelated to [defendants'] subjective belief." *Bah v. Apple Inc.*, 2021 WL 4416104, at *3 (D. Mass. Sept. 27, 2021). Dr. Afrasiabi fails to provide any plausible, factual basis to infer that any defendant had serious doubts that the material facts about him were false.

Indeed, the Complaint contains no reference to the standard at all and fails to offer a single fact pleading that prior to publication, Defendants knew the Statements to be false. *See generally* Complaint. At most, Dr. Afrasiabi claims that he disagreed with Mr. Morgan during the Segment about having been arrested for "spying," a dispute that Defendants aired. Compl. ¶ 18. He also pleads that *after* the Segment, he emailed Mr. Naik to object to the term's use. *Id.* ¶ 19. But, actual malice is measured *at the time* of publication and therefore cannot be shown by post-publication conduct. *Sullivan*, 376 U.S. at 286. And, more than that, in response, Mr. Naik affirmed his belief that the characterization of "spying" was correct—proving that Defendants had (and have) no doubt about the Segment's accuracy.  Compl. ¶ 19.

If that were not enough—which it assuredly is—the First Circuit has held, Defendants' prominent inclusion of Dr. Afrasiabi's denials, both in the promotional social media clips and in

14

the Segment "undercut[s] any inference of actual malice." *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) *see id.* (defendant's publication of plaintiff's "denial of the claim that he was under investigation" showed lack of actual malice.); *Portnoy v. Insider, Inc.*, 2022 WL 16748583, at *8 (D. Mass. Nov. 7, 2022) (same). At bottom, Dr. Afrasiabi has failed to plead any facts that any of the three Defendants actually had doubts about the accuracy of the Segment, and Plaintiff's defamation claim must be dismissed for this additional reason.

## II.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A "CIVIL RIGHTS VIOLATION"

Next, Dr. Afrasiabi's "civil rights" claim must be dismissed for falling far short of Fed. R. Civ. P. 8(a)(2), which requires that pleadings contain "more than an unadorned, the- defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Here, Dr. Afrasiabi nakedly asserts that Defendants "violated his civil rights" by stating he "had been arrested as an Iranian spy." Compl. at p. 8. Such "labels and conclusions"—that do not even reference a statute or infringement of any right—do not come close to meeting Rule 8's pleading standard. *Iqbal*, 556 U.S. at 678 (cleaned up).

Even assuming that Dr. Afrasiabi brings this "civil rights violation" under 42 U.S.C. § 1983, he has not pled a single supporting fact showing either "an alleged constitutional deprivation" or that Defendants "may fairly said to be [] state actor[s].' *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted). Plaintiff has not even alleged what constitutional right he was deprived of (indeed, his claim attacks *Defendants* for exercising *their* First Amendment rights), and the Complaint does not offer a single allegation showing that Defendants are state actors or acted pursuant to government authority. To the contrary, the Complaint establishes them as private figures who produce a show in the U.K. Compl. ¶¶ 1-3.

Even if Dr. Afrasiabi's "civil rights" claim were construed under the Massachusetts Civil

Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11H (2021), it would fare no better. While MCRA does not require defendants to be state actors, *Bell v. Mazza*, 394 Mass. 176, 182(1985), it does require "proof of (1) an existing right secured by the Constitution or laws of the United States or of Massachusetts, (2) interference or attempted interference with that secured right, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989). Here, Dr. Afrasiabi's claim fails on each prong of the test. His barebones pleading that Defendants "willfully [lied] that Afrasiabi had been arrested as an Iranian spy violated his civil rights," Compl. at p. 8, does not plead a cognizable "existing right," an interference with that right, nor any "threats, intimidation, or coercion" by Defendants. *Id.* Under either federal or state law, Dr. Afrasiabi's claim for an alleged "civil rights violation" must therefore fail.

## III.    DR. AFRASIABI HAS NOT ADEQUATELY PLED EMOTIONAL DISTRESS

Dr. Afrasiabi has also not adequately alleged his claims for intentional and "nonintentional" emotional distress and they should therefore be dismissed.

*First,* because the Complaint forthrightly pleads that Dr. Afrasiabi's "emotional "damage" claims are based on the same allegedly false statements at issue in the defamation claim, *see* Compl. ¶¶ 20-22, they should be dismissed as duplicative of his defective defamation claim. *See, e.g.*, *Scholz v. Delp*, 473 Mass. 242, 254 (2015) (where plaintiff cannot prevail on defamation claim, he "cannot establish the derivative claim of intentional infliction of emotional distress"), *cert. denied,* 578 U.S. 1023 (2016); *Shay*, 702 F.3d at 83 ("[A] failed defamation claim cannot be recycled as a tort claim for negligent . . . infliction of emotional distress.") (citing *Hustler*

4916-9845-7953v.3 0125866-000002

*Magazine, Inc. v. Falwell*, 485 U.S. 46, 56-57 (1988)).[6]

     *Second*, even if not duplicative, Dr. Afrasiabi has not pled—and cannot plead—an essential element of the claim: "that the defendant's conduct was extreme and outrageous." *Sena v. Commw.*, 417 Mass. 250, 263-64 (1994).[7] Satisfying this element requires Dr. Afrasiabi to show that Defendants' conduct was "beyond all bounds of decency and . . . utterly intolerable in a civilized community." *Id.* at 264. (citation omitted). The First Circuit has long recognized that "many of the legitimate news stories that appear in the media involve foreseeable distress for the subject of the story, probably severe distress in some cases" but this is not "even remotely close to conduct 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *Brown v. Hearst Corp.*, 54 F.3d 21, 26-27 (1st Cir. 1995) (news coverage suggesting that plaintiff had murdered his wife was distressing but not "extreme and outrageous"). That is precisely the case here—Mr. Morgan simply stated, based on his understanding of the prosecution against Dr. Afrasiabi, that he had been "arrested in the US for alleged spying before being pardoned by Joe Biden." Compl. ¶ 18. These statements are not "extreme or outrageous" as a matter of law.

     *Third*, Dr. Afrasiabi's "nonintentional" infliction of emotional distress claims also fails because "it is fundamental [to these claims] that there must be a showing of a duty of care owed to the plaintiff, because there can be no negligence where there is no duty." *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004). Dr. Afrasiabi has not and could not allege that Defendants owed him such a duty. Media defendants simply do not have a duty to fact check every statement they publish. *See Barden v. Harpercollins Publishers, Inc.*, 863 F. Supp. 41, 45 (D. Mass. 1994) ("The

---

[6] These claims are constitutionally barred because they arise entirely from speech on matters of public concern—the arrest and prosecution of an alleged Iranian agent in the United States. *See Snyder v. Phelps*, 562 U.S. 443, 451, 459-60 (2011) (First Amendment precludes emotional distress claims arising from public interest speech).

[7] Dr. Afrasiabi must also allege that Defendants intended to cause, or should have known that their conduct would cause, emotional distress. *Id.* at 263-64. The Complaint fails to do so. Compl. ¶¶ 21-22. This is yet another reason to dismiss this claim.

burden placed upon publishers to check every fact in the books they publish is both impractical and outside the realm of their contemplated legal duties."). And "any temptation" to "create such a duty is tempered by the 'gentle tug of the First Amendment' and the values embodied therein." *Id.* Because Defendants owe no general duty of care here, the negligent infliction of emotional distress claim fails.[8]

## IV.    DR. AFRASIABI CANNOT STATE A CLAIM THAT DEFENDANTS INCITED UNRELATED THIRD-PARTIES TO VIOLENCE

Finally, Dr. Afrasiabi's claim that Defendants "incited" an unrelated and unknown third party to assault him based on their constitutionally protected speech is woefully deficient. Massachusetts law recognizes no civil claim for "incitement of violence." But even construing his claim as one for civil harassment, Plaintiff's claim fails. To plead civil harassment under Massachusetts law, plaintiff must plead "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damages to property and that does in fact cause fear, intimidation, abuse or damages to property." Mass. Gen. Laws ch. 258E, § 1 (2021); *see Manning v. Whole Foods Mkt. Grp., Inc*., 2022 WL 194999, at *7 (D. Mass. Jan. 21, 2022).

Defendants are sympathetic to the unfortunate assault upon Dr. Afrasiabi—but he cannot hold them liable for it. As an initial matter, he has not pled a single fact actually connecting Defendants to the assailant or the attack. Moreover, he has not pled that Defendants had "the intent to cause fear, intimidation, [or] abuse" and that Defendants' acts "cause[d] fear, intimidation, [or] abuse." Mass. Gen. Laws ch. 258E, § 1. Nor has Dr. Afrasiabi pled that Defendants committed

---

[8] Plaintiff has also not alleged that "a reasonable person would have suffered emotional distress under the circumstances of the case." Indeed, Massachusetts courts have explained, "[w]ithout a viable defamation claim, it would be difficult to find that a reasonable person would have suffered emotional distress under the circumstances." *Albright v. Morton*, 321 F. Supp. 2d 130, 141 (D. Mass. 2004), *aff'd sub nom. Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005).

"three distinct acts", as is required by the statute. *Manning,* 2022 WL 194999, at *7. Thus, this "incitement" claim also fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Dr. Afrasiabi's complaint should be dismissed with prejudice.

Dated:  August 26, 2025

<div style="margin-left:40%">

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ Rachel F. Strom*

Rachel F. Strom (BBO #666319)

Nimra H. Azmi (*pro hac vice forthcoming*)

Ryan Hicks (*pro hac vice forthcoming*)

1251 Avenue of the Americas, 21st Floor

New York, NY 10020

Telephone: (212) 489-8230

rachelstrom@dwt.com

nimraazmi@dwt.com

ryanhicks@dwt.com

Justin P. O'Brien (BBO #658765)

Benjamin A. Ashenburg (BBO #710713)

LOVETT O'BRIEN LLP

155 Federal Street, Suite 1300

Boston, MA 02110

Telephone: (617) 371-1035

jobrien@lovettobrien.com

bashenburg@lovettobrien.com

</div>

19

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

I hereby certify that on August 26, 2025, I, Rachel F. Strom, counsel for Defendants, attempted, over the course of two phone conversations and two emails, to meet and confer in a good faith in an attempt to narrow or resolve the issues addressed in this motion. Plaintiff, however, hung up on me both times and said (and sometimes shouted) various things that made it clear that we will not be able to have a productive meet and confer.

/s/ *Rachel F. Strom*
Rachel F. Strom

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Memorandum of Law was mailed first-class, postage pre-paid to the following on August 26, 2025:

Kaveh L. Afrasiabi
103 Indian Hill Road
Carlisle, MA 01741

/s/ *Rachel F. Strom*
Rachel F. Strom

Dated:  August, 26, 2025

4916-9845-7953v.3 0125866-000002